McLean *v.* The Republic Fire Insurance Company.

JOSEPH McLEAN, et al., *v.* THE REPUBLIC FIRE INSURANCE COM-
PANY OF THE CITY OF NEW YORK.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1869.)

Where an insurance company has accepted a risk which it determines to
cancel, the insured is entitled to reasonable notice of such determination.
And when it intrusts the duty of cancellation to its agent, and omits to pre-
scribe the time within which the same shall be perfected, nothing short
of an absolute abuse of discretion or fraud on the part of the agent in
neglecting to make the cancellation relieves the principal from liability.

THIS action was brought to recover the amount insured by
the defendant upon the plaintiffs' steamer Columbus. The
insurance was $2,500, and was effected by policy of the
defendants, No. 8,039, at Troy, through their agents there,
B. A. Tillinghast & Son, on the 28th of February, 1866,
to continue for one year from that date. On the 25th of
February, 1867, Rogers, of Troy, also an insurance agent,
through whom the plaintiffs effected all their insurances, not
only on the Columbus, but on their other steamboat property,
went to B. A. Tillinghast & Son and procured from them, for
the plaintiffs, the following renewal of the policy :

OFFICE OF REPUBLIC FIRE INSURANCE Co.,
No. 16 WALL STREET.

No. 8,173. Received from Joseph McLean and others thirty-
one and $\frac{25}{100}$ dollars, being the premium on $2,500, insured
under policy No. 8,039, which is hereby continued in force for
one year, to wit, from the 26th day of February, 1867, until
the 26th day of February, 1868, at noon.

Signed, in the city of New York, on the 3d day of Novem-
ber, 1865, but not valid unless countersigned by B. A.
Tillinghast & Son, agent of this company at Troy.

ROBERT J. HOWE, *President.*

D. F. CURRY, *Secretary.*

Countersigned and issued this
26th day of February, 1867.

B. A. TILLINGHAST & SON, *Agents.*

And this renewal was immediately sent by Rogers, who resided at Troy, to the plaintiff's office in West Troy and received by them there.

It appeared that Tillinghast & Son were in the habit of receiving from the defendant policies signed by its officers, and also renewals, which were good when countersigned by them. The method of doing business between the two agents, Rogers and Tillinghast & Co., was as follows : They were in the habit of applying to each other for and receiving policies for their respective clients, from the companies represented by each, and settling with each other as to the premiums at the end of each month. When Rogers applied, for his clients, to Tillinghast & Son for a policy in one of their companies, and received it, he credited them in his book with the amount of the premium, and when they applied to him for a policy for their clients in one of his companies, and he delivered it, he charged them the amount of the account in his book. They also followed the same custom in their books, and the accounts were settled generally monthly.

When Rogers procured the renewal, on the 26th of February, 1867, he credited them the amount of the premium, $31.25, which, deducted from the debits he then had against them for policies they had obtained from him, still left a balance his due from them of $7.24.

Tillinghast & Son, having renewed the insurance for a year, reported that back to the defendant. On the 27th February, it wrote T. & Son that it desired to raise its rates, and requesting them to have the renewal canceled unless the insured would pay two per cent instead of one and one-fourth, at which the policy had been originally issued, and just been renewed.

On the 28th day of February, the next day, Joseph Tillinghast went to Rogers and stated that they wanted two per cent, and, if he did not wish to pay, they desired to discontinue the risk. It appeared that at this time, and at the end of every month, insurance agents are very busy in making their returns to the companies who employ them. Rogers

declined to pay the additional premium for a continuance, but stated to Tillinghast that he was then very busy, and asked him to give him until the next day to "get it up," (the policy) and get a new risk substituted. On the next day (the 1st of March), they met in the street, and Rogers, being still much hurried, got from Tillinghast a consent to postpone the cancellation until the next day, to enable Rogers to "get it up," the renewal, and substitute another policy.

Tillinghast gave evidence on behalf of the defendant, to the effect that he told Rogers, on the first interview, that he must consider the renewal as then canceled, and that the giving time was merely to permit Rogers to get the renewal from West Troy. But this was denied by Rogers.

The term "get up," used as to a policy or renewal, was proved to have a fixed technical meaning among insurance men, and to import the relieving a company from the risk, and terminating the policy.

The Columbus was totally destroyed by fire at Athens, Greene county, on the night of the 1st of March, 1867. On the morning of the 2d of March, Rogers, not knowing of the fire, made out a policy in the Merchant's Insurance Company, on the Columbus, for $2,500, and took it across the river to the plaintiffs' office. He told the person in charge, John Riley, that he wished to make some change in their policies. The bundle of policies belonging to them was handed over to him, and he extracted from the bundle the defendant's renewal and put in its place the Merchants' policy. Neither Riley nor any of the plaintiffs knew at the time what he had done, nor what policy he had exchanged, he being in the habit of effecting all their insurance, and coming over and substituting policies without much inquiry on their part. Rogers took the renewal across to Troy; and, on his way to his own office, called at Tillinghast's and left it there, where they wrote upon it "canceled," etc., as it appeared when put in evidence. Rogers, on arriving at his office, learned from his partner of the fire; Duffy, one of the plaintiffs, having been over and left word at R.'s office. Rogers immediately went back to

West Troy and stated to Riley that he took away the renewal and left the new policy, not knowing that the Columbus was then burned. He said he wanted to get back the new policy, as it was not holden. The plaintiff's, after taking advice, gave it up, and Rogers destroyed it.

The plaintiffs were in the habit of paying Rogers whenever he sent in his account, and they did pay him in full about the 2d of March.

The court left the question to the jury whether Tillinghast & Son, the defendant's agents, canceled the policy on the 28th of February or consented to postpone it until the 2d of March, as testified by Rogers, to enable him to get a new risk; and the court charged them substantially that the defendants had a right, under the circumstances, to cancel *instanter*, without any previous notice, and without paying back anything, and that notice to Rogers of cancellation was sufficient.

The defendant excepted to the court's refusal to hold that the renewal was never valid or effectual to bind the defendant; also, to its refusal to hold, as matter of law, that the renewal had been canceled; also, to its refusal to hold that if Rogers was ignorant of the fire when he made out the new policy, although after the fire, that policy was binding.

The jury found a verdict for the plaintiffs for $2,850, and the court ordered the defendant's exceptions to be heard at the General Term in the first instance.

*John. H. Reynolds*, for the defendant.

*Matthew. Hale*, for the plaintiffs.

Present—INGALLS, HOGEBOOM and PECKHAM, JJ.

By the Court—INGALLS, P. J. It is very clear that there was a valid renewal, by the defendant, of the policy in question; and hence the important question is, whether such policy was canceled previous to the fire and subsequent to the renewal. There is some conflict between the agents of the

plaintiffs and defendant, in their evidence in regard to the transaction, and it was the province of the jury to settle that question, and we must assume that they found the facts favorably to the plaintiffs. The defendant negotiated with the plaintiffs through Messrs. Tillinghast & Son, who were the general agents of the defendant, in effecting insurance, and in doing whatever was necessary in transacting such business. The authority of a general agent in effecting insurance, and the extent of the responsibility of the principal for the acts of such agent, is well defined by repeated adjudications. (*Boehen* v. *Williamsburgh Ins. Co.*, 35 N. Y., 131; *Trustees of First Baptist Church* v. *The Brooklyn Ins. Co.*, 19 N. Y., 305; *Goit* v. *The N. P. Ins. Co.*, 25 Barb., 189; *Carroll* v. *The C. O. Ins. Co.*, 40 Barb., 292.) The defendant did not unconditionally refuse to continue the risk, but gave its agents the following direction:

"OFFICE OF REPUBLIC INSURANCE COMPANY,
153 BROADWAY, NEW YORK, 27*th February,* 1867.

"B. A. TILLINGHAST & SON:

"*Gentlemen.*—Report No. 8173 is received. The rate on steamboats is two per cent here, and we, of course, cannot take a risk for less than the rate. *Please cancel, or get two per cent.* We don't care about insuring steamboats any way, but when we do, we must get full rates.

"Very respectfully,
"D. F. CURRY."

Tillinghast, the defendant's agent, called upon Rogers, the plaintiffs' agent, on the 28th of February, 1867, and informed him of the directions which he had received from the company, and Rogers declined to pay the premium required, but, owing to the pressure of business, requested a delay until the following day, "to get up the policy," viz., to relieve the company of the risk; which was granted by Tillinghast. And there was a further extension until the 2d day of March, and the vessel was destroyed by fire on the night of the 1st of March. The court charged the jury as follows: "The question is, did he (the defendant's agent) give him (the

plaintiffs' agent) time first, for one day, and then next, for another day, to procure the renewal certificate, and to continue the risk in the mean time? If he did, the defendants are liable; for, before those two days had expired, the property burned up, and the loss was sustained. If, on the contrary, on the 28th of February, the defendants' agent gave him explicit notice, whether verbally or in writing, whether by showing the letter or said so orally, that the risk must be considered at an end, and the cancellation was to take effect from that time, the defendants are not at all liable, and there would be no propriety in rendering a verdict against them." This was substantially the ground upon which the case was submitted to the jury, and upon which it was disposed of at the circuit. The case is therefore, in my judgment, reduced to this single proposition, whether what occurred between Tillinghast and Rogers at the interview on the 28th of February had the effect absolutely to cancel the insurance at that time. While I do not regard the question entirely free from difficulty, yet I am inclined to the conclusion that the ruling of the court is defensible. The defendant did not, in the letter of instruction to the Tillinghasts, prescribe the time within which the business should be transacted by which the policy was to be canceled, unless the increased premium should be paid, nor the manner in which the same was to be performed by the agent, but evidently left that to the discretion of such agent, who had the power to issue and renew policies of insurance, and to do any act within the scope of such general agency. The tendency of recent adjudication is to regard with considerable liberality the acts of such agents in binding the principal, when fraud is not imputed. In *Boehen* v. *Williamsburgh Ins. Co.* (35 N. Y., 131), the court sustained the insurance, although the insured did not pay the premium when the certificate of renewal was delivered, and the policy expressly provided that the same should not be considered binding until the premium was paid. It is clear from the evidence of Rogers that he did not understand that the policy was canceled at the first interview with Tillinghast, who

McLean *v.* The Republic Fire Insurance Company.

informed him of the instruction received from the defendant, and consented to the delay in getting up the policy. Under all the circumstances I do not think the delay granted was unreasonable or an abuse of discretion on the part of the defendant's agent. It did not amount strictly to an agreement to continue the insurance; but rather had the effect to prolong the period within which the process of cancellation should be accomplished. The certificate of renewal was to be procured and surrendered, which was not done until the 2d of March, and the policy was not in fact marked canceled until that day. Until there was an actual cancellation of the insurance it continued, not by force of any agreement made by the agent on the 28th February, but by force of the renewal of the policy which had been previously delivered. When an insurance company has accepted a risk, it is but just to hold that the insured is entitled to reasonable notice of the determination of the company to cancel such risk; and when the company omits to prescribe the time within which the process of cancellation shall be perfected, and intrusts the same to its agent, nothing short of an absolute abuse of discretion by the agent, or fraud on his part, should relieve the principal of liability. If the agent of the defendant intended to pronounce the risk at an end on the 28th February, he should have so stated to Rogers, and absolutely refused to allow any time within which to get up the policy. He had no right to trifle with the plaintiffs through their agent. We must assume that the jury accepted Rogers' version of the transaction, which shows pretty clearly that neither agent understood the insurance terminated on the 28th February. We are of opinion that the defendant was bound by the act of its agent, who is not shown to have transcended the authority conferred, or to have been guilty of fraud. A new trial should be denied with costs, and the plaintiffs allowed to enter judgment.

New trial denied.