33   583
8ap108

JOHN HODGE, RESPONDENT, v. THE SECURITY INSUR-
ANCE COMPANY OF NEW HAVEN, CONNECTICUT, APPELLANT.

*Policy of insurance — an agent authorized to procure a policy, is not authorized to receive notice of its cancellation by the company—when a custom to that effect cannot be shown.— when the prepayment of the premium is waived by the delivery of the policy.*

The plaintiff, residing in Lockport, applied for insurance upon his opera-house situated in that city to one Holt, an insurance agent. Holt applied therefor to one Ellis, an insurance broker residing in Buffalo, who applied to Fish and Armstrong, who were the defendant's agents at that place. They delivered a policy on December tenth for $1,000 to Ellis, stating to him that they would take the risk conditionally and report it to the company; that they would issue the policy subject to its approval, and if it disapproved of it the policy was to cease and be returned immediately. Ellis handed the policy to Holt, who delivered it to the plaintiff. On December seventeenth Fish and Armstrong received a letter from the company, dated December fourteenth, saying that it could not accept the risk and directing them to decline it. They on that day wrote to Ellis saying that the company had ordered their policy canceled and asking him to return it at once. Ellis thereafter saw Holt and asked him to take up the policy, but no notice was given to the plaintiff by Holt or by the defendant's agents. On January fifth the property was destroyed by fire.

*Held*, that the policy having been delivered to the plaintiff's agent unconditionally, all the previous negotiations and stipulations were thereby merged and rendered of no effect.

That the determination of the company to cancel the policy was ineffectual because the notice of such determination was not served upon the plaintiff, or upon any person having authority, as his agent, to receive such notice.

The defendant sought to prove a custom among insurance agents and brokers in Buffalo of giving and receiving notices of termination of insurances by the election of the company.

*Held*, that the evidence was properly rejected as it was not shown that the plaintiff had knowledge thereof or assented thereto.

It appeared that Ellis had an account with the defendant's agent for premiums on policies which were settled from time to time.

*Held*, that the delivery of the policy without requiring the prepayment of the premium was a waiver of the right to set up its non-payment as a defense.

APPEAL from a judgment in favor of the plaintiff, entered on a verdict directed by the court.

The recovery was had on a policy issued by the defendant, insuring the plaintiff against loss or damage by fire to the extent of $1,000, on his opera-house block, in Lockport, and the furniture, etc., therein.

*Edward D. McCarthy*, for the appellant.

*George C. Greene*, for the respondent.

BRADLEY, J.:

The plaintiff, residing in the city of Lockport, applied to Elijah Holt, an insurance agent of that city, for insurance on his opera-house block, etc., situate there. Thereupon Holt spoke to Robert C. Ellis, a broker, residing in the city of Buffalo, about furnishing a policy for $1,000. Ellis said he could and shortly after and on the 10th day of December, 1880, Ellis called upon the firm of Fish & Armstrong, agents at Buffalo for the defendants, and applied to them for the policy, and they issued it and Ellis handed it to Holt, who, on the same or the next day delivered it to the plaintiff. When the application was made by Ellis to Fish & Armstrong they, as appears by the testimony of the latter, first objected to taking the risk, and after discussing it told him they would take it conditionally; that they would report the risk to the company; that they would issue the policy of insurance; that it should be subject to the approval of the company; and that if the company disapproved it the policy was to cease and be returned immediately.

They did communicate with the defendant, and on seventeenth December received from it a letter of date fourteenth December addressed to them saying: " We cannot accept line on opera-house,

Lockport, N. Y. (2683.) Please decline and oblige." And the defendant's agents immediately wrote and sent to Ellis, who was then at Lockport, the following:

> "BUFFALO, *December* 17, 1880.

R. C. ELLIS, Esq., *Lockport:*

"DEAR SIR — The Security Insurance Company have ordered their policy, 2683, for J. Hodge, Hodge Opera House, canceled. Please return it to us at once and oblige,

> "Yours, very truly,
> "FISH & ARMSTRONG, *Agents.*"

which was received by Ellis, and he shortly after saw and requested Holt to take up the policy, but no communication was made by either of them, nor by the defendant's agents to the plaintiff.

The building and contents were destroyed by fire on the 5th day of January, 1881. The requisite notice and proofs of loss were given and furnished to the defendant, and after the sixty days' grace, given by the policy, this action was commenced. The complaint contains the usual allegations in such cases. The answer does not deny the issuing of the policy, but alleges that the policy was procured by the agent of the plaintiff and the contract therefor made by such agent in behalf of the plaintiff with the defendant's agents; that the policy was delivered to the plaintiff's agent for his benefit; that no part of the premium was or has been paid, and that pursuant to the provisions there referred to of the policy the defendant terminated the insurance represented by the policy in the exercise of its optional right by giving the plaintiff, through his authorized agent, notice to that effect. The defendant's counsel contends:

1. That the policy did not become operative, and that it was issued and taken under an executory arrangement, which did not permit it to become effectual unless and until the risk was approved by the defendant.

2. That if otherwise, then the notice given had the effect to terminate the policy.

3. That the premium was not paid and no credit was actually given and none can be inferred under the circumstances.

The defendant's agents having power to issue the policy, and

having delivered it to Ellis without any restriction in respect to the delivery by him to the plaintiff, the delivery to and acceptance by the latter effectuated the contract of insurance, unless there was some condition precedent that made the delivery incomplete. It is contended that there was no delivery of the policy other than as in the nature of an *escrow.* This cannot be so treated as the policy was not handed to a stranger, but was delivered to one acting as the agent of the plaintiff. ( *Worrall* v. *Munn,* 5 N. Y., 229 ; *Cocks* v. *Barker,* 49 id., 110 ; *Henshaw* v. *Dutton,* 59 Mo., 139.) And although the rule that the delivery when made of a complete instrument by one of the parties to it, to the other for whose benefit it purports to be made is not liable to challenge, may not strictly be applicable to instruments not under seal, yet in such case the party charging that a delivery formally made was not in fact to take effect as a delivery, has the burden to clearly show that the instrument did not become operative ; and having been delivered it is not subject to defeat by an oral arrangement, not appearing in it, that it should be given up in an event which may have afterwards arisen. (*Tower* v. *Richardson,* 6 Allen, 351 ; *Spring* v. *Lovett,* 11 Pick., 417 ; *Allen* v. *Furbish,* 4 Gray, 504.)

In support of the contention that the preliminary negotiation and arrangement which resulted in the issue of the policy defeated its operation in the hands of the plaintiff the defendant's counsel cites *Wood* v. *Poughkeepsie Insurance Company* (32 N. Y., 619) as controlling authority. The question there was whether or not there was a waiver of a condition in a policy, and the court held there was not. The policy in that case was not delivered to the assured named in it, but was in his absence left with his clerk with specific instructions and upon the condition that when the assured returned home he should pay the premium, if accepted, otherwise return the policy. That case does not seem to apply materially to the question under consideration.

Here there was a delivery to the plaintiff's agent without any instruction or condition having relation to any provision of the policy, which by its terms was to be performed as a condition precedent to its effectual operation, and no qualified delivery was in that manner made. The talk and arrangement between the defendant's agents and Ellis in legal effect had no reference to the delivery of

the policy, but only to its continuance as an insurance. It was information that the defendant might not approve the risk and that if they did not "*the policy was to cease and be returned.*" It was an expression in the nature of a condition subsequent by which Ellis was advised that the right reserved in the policy to terminate it would, in that event, be exercised. And the defendant, as appears by its answer, so understood the situation when it alleged that the policy was delivered to the plaintiff's agent for his benefit, and that the insurance was terminated by giving the notice required The policy must therefore be deemed to have been delivered and to have become operative as a contract of insurance.

The question arises whether the notice to Ellis was notice to the plaintiff. If it was, the insurance was terminated and the plaintiff was not entitled to recover. The policy provides that "the insurance may be terminated at any time at the option of the company on giving notice to that effect." In making the application to the defendant's agents, and in taking the policy and handing it over to Holt, Ellis must be deemed acting for the plaintiff and as his agent. In that respect the policy provides "that any person other than the assured who may have procured this insurance to be taken by this company shall be deemed to be the agent of the assured named in the policy, and not of the company, unless he shall have received a commission signed by the officers of this company appointing him agent."

The contention of the learned counsel for the defendant is that for the purposes of the notice Ellis continued to be and was the agent of the plaintiff, and that the communication to him of the direction of the defendant in respect to the risk was effectual to terminate the insurance, and in support of his position cites: *The Standard Oil Company* v. *The Triumph Insurance Company* (64 N. Y., 85), and *McLean* v. *The Republic Fire Insurance Company* (3 Lans., 421). In those cases the persons acting for the plaintiffs were actually employed by them, and their relations to the plaintiffs were practically those of general agents, so far as related to the procuring and looking after the insurance of their property. The power of those agents in that respect was ample, and the exercise of it was not dependent upon special instructions. They in fact represented their principals in that department of their business. The situation of Ellis was very different. There was no conven

tional relation of principal and agent between him and the plaintiff. That relation arose out of the adoption by the plaintiff of the assumed action by Ellis for him. The policy was then taken and delivered to the plaintiff. He accepted it. That was apparently and in fact a complete transaction. To that extent and for that reason the act of Ellis must be deemed to have been for the plaintiff. The business of Ellis was that of a solicitor of insurance when opportunity occurred. He was not employed nor paid by the plaintiff. It is difficult to see how he could be treated as continuing the agent of the plaintiff for any purpose after the policy was delivered to the latter. The employment of Ellis by Holt was simply to procure a policy of insurance. When that was completed by the delivery of the policy his agency ceased. (*Grace* v. *Am. Central Ins. Co.*, 109 U. S., 278; reversing S. C., 16 Blatchf., 433.)

The case last cited is quite directly in point. There a broker was employed to procure insurance. He did so and the policy was delivered to the assured, and shortly after the broker who procured the policy was notified by the agent of the company that it refused to carry the risk and required the return of the policy, and he gave the agent to understand that it would be returned. The court held that when the contract was consummated by the delivery of the policy the person so procuring it ceased to be the agent of the assured, and that the notice given was not notice to the latter. That is so here. The plaintiff had no notice of the purpose of the company to terminate the risk taken by the policy in question. And the question of custom which the defendant sought to establish as existing between the insurance agents and brokers in the city of Buffalo, of giving and taking notice of termination of insurance obtained by the latter, has no importance. They could not create a custom that would have the effect to vary the terms of the contract of insurance. That required notice to the assured to terminate the operation of the policy. A notice to somebody else with no authority to receive it for him could not by any custom of which he had no knowledge, and without his consent, prejudice his rights. (*Grace* v. *Am. Central Ins. Co.*, 109 U. S., 278; *Standard Oil Co.* v. *Triumph Ins. Co.*, 64 N. Y., 91.)

In respect to the non-payment of the premium, the evidence justified the conclusion that the prepayment of it was waived. The

delivery of the policy without requiring prepayment is evidence of waiver and of intention to give credit. (*Boehen* v. *Williamsburgh City Ins. Co.*, 35 N. Y., 131; *Bodine* v. *Exchange F. Ins. Co.*, 51 id., 117, 122; *Van Schoick* v. *Niagara F. Ins. Co.*, 68 id., 439, 440.) And in addition to that the defendant's agents had an account with Ellis in the insurance business, who from time to time settled with them for premiums, etc., on policies issued upon his solicitation, which relation and transactions so conducted between them permits the inference that the payment of the premium at or before the issuing of the policy in this instance was waived. Whether or not there was a question of fact presented by the testimony is not important, as the defendant's counsel expressly conceded at the trial that there was no question for the jury. The case was properly disposed of at the trial.

The judgment appealed from should be affirmed.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Judgment affirmed.