MARTIN LIPMAN, as Surviving Partner of EPHRAIM KARELSEN, Respondent, *v.* THE NIAGARA FIRE INSURANCE COMPANY, Appellant.

*Reasonable notice of an intention to rescind an insurance policy — the form of policy called for by a " binding-slip" is the usual form of policy issued by the particular company.*

In this action, brought to recover for a loss under a policy of insurance, it appeared that certain insurance brokers, by the plaintiff's instructions, took what is known as a " binding-slip," which was a memorandum to the effect that certain policies would be issued to the plaintiff. This binding-slip was immediately sent by the brokers to the plaintiff, and remained in his possession until the premises were injured by fire. About half-past twelve in the afternoon of September third the insurance company sent word to the brokers that they did not wish to write the risk, and at three o'clock in the afternoon of that day a fire took place by which the premises were injured.

*Held,* that the notice given was not sufficient to terminate the insurance, as it did not afford sufficient time between the giving of such notice and the time of the fire to enable the plaintiff to obtain insurance upon the premises.

*Semble,* that a claim on the part of the defendant that the policy usually issued by that company contained a clause allowing the company, by giving notice, to terminate the contract of insurance, was well taken, and that the binding-slip should be construed to require such a policy as the company mentioned therein ordinarily used.

That the question as to whether such a provision in the policy was or was not a usual provision in insurance policies was not presented in this case.

That the only policy that the plaintiff was entitled to was such a policy as was then in use by the company, whether it contained conditions usual or unusual, and that it was the duty of the insured or his representative, the broker, to have ascertained what the form of the policy was which was usually issued by the defendant.

*De Grove* v. *The Metropolitan Insurance Company* (61 N. Y., 504) followed.

APPEAL from judgment in favor of the plaintiff, entered on the verdict of a jury rendered at the New York Circuit.

*R. W. De Forest,* for the appellant.

*Adolph L. Sanger,* for the respondent.

BRADY, J.:

On the 2d of September, 1885, the plaintiffs instructed certain insurance brokers to procure insurance on their property The brokers took what is known as a binding-slip to the defendant, which was accepted by them, and which is as follows:

"PELL, WALLACK & Co., INSURANCES, }
"No. 55 LIBERTY ST., NEW YORK, *September* 2, 1885. }

"The undersigned do issue for account of Shaped Seamless Stocking Company, amounts as specified below at 1¼ for twelve months from September 2, 1885, on machinery and stock, building No. 3 (as per form, building situate Randall's Island, N. Y.) This receipt binding until policy is delivered at the office of Pell. Wallack & Co.

| Company. | Amount. |
| --- | --- |
| "Niagara | $2,500 |
| "Sun, England | 2,500 |
| "New Hampshire | 1,250 |
| "Buffalo, German | 1,250 |
| "Citizens' German (Pitts.) | 1,250 |

"Accepted by POLLOCK.

"VALETTE for M.

"T. J. TEMPLE & Co., C.

The brokers upon receiving the binding-slip immediately sent it to their principals, the plaintiffs in this action, and it remained in their possession until the day of the fire. It is conceded that by this occurrence a contract of insurance existed which continued

until lawfully terminated. The fire took place on the third of September at three o'clock in the afternoon. On that day, and at about half-past twelve o'clock, the company sent to the brokers a notification that they did not want to write the risk, which seems to be a form of expression used for declaring that the insurance would not be continued, and the brokers thereupon sent a boy in their employment, named Campbell, to ascertain why the defendants did not want to take the risk. He was also instructed to tell the clerk in charge that the brokers had not the binding-slip, but would try to replace the risk that afternoon, and when the boy came back he said all right, and the brokers thereupon tried to get the insurance elsewhere. This statement, although established by the evidence of their messenger, is denied by the defendant, who insisted, under the terms of the policy which was to be issued, that it had the right to give the notice sent, and thus to terminate the contract existing and formed by the binding-slip. This claim was founded upon a provision in the policy of insurance adopted at that time by the defendant, which is as follows :

"5. RELATIVE TO ISSUE AND CANCELLATION OF POLICY.

"1. If any broker or other person than the assured have procured this policy, or any renewal thereof, or any indorsement thereon, he shall be deemed to be the agent of the assured, and not of this company, in any transaction relating to the insurance.

"2. This insurance may be terminated at any time by request of the asssured, or by the company, on giving notice to that effect to the assured, or to the person who may have procured this insurrnce to be taken by this company. On surrender of the policy the company shall refund any premium that may have been paid, reserving the usual short rates in the first case and *pro rata* rates in the other case."

Upon the trial the plaintiffs insisted that this condition was unusual and that they were entitled to an ordinary policy of insurance, and were not to be controlled or bound by one containing an unusual condition. The defendant contended that the policy for which provision was made, and which was to be issued in accordance with the terms of the binding-slip, was such a policy as they then used, and

no other, and this position would seem to be well sustained by the adjudication in *De Grove* v. *The Metropolitan Insurance Company* (61 N. Y., 504). That was a case kindred to this, and no difference in principle is discovered in the application of the facts between it and the case in hand. It was there held that if an agent of a fire or marine insurance company, upon application for a marine insurance, instead of delivering a policy, executed and delivered to the applicant a receipt for the premium, which contained a brief statement of the risk insured, that the assured was entitled to insurance in the usual form, and that the usual form of the policy used by the company was to be looked into to ascertain the limitation, and conditions of the policy and the liability of the company. The court, in the opinion, said: " Every business man knows that all insurance companies have forms of policies in common use, which contain the terms, limitations and conditions to be inserted in all contracts of insurance." They must have expected an insurance upon the usual terms. It cannot be presumed that they expected a special contract varient from the usual terms imposed by the company.

The issue as to whether the policy was a usual one undoubtedly invoked much of the evidence taken upon the trial, and the learned justice presiding thought that it presented the only question in the case, and so submitted it to the jury. The learned justice, after the testimony was closed, in the course of a discussion between the respective counsel and himself, said: I think that under the binding-slip the plaintiff was entitled to an ordinary policy of insurance, and if your policy contained extraordinary clauses, such as are not found in policies generally in this city, the plaintiff is not bound by that clause, and I am going to submit this case to the jury on the question as to whether, upon the evidence, they find that clause was usual in the policies of the companies in the city of New York at that time. If they find that it was, I shall then direct them that they should find a verdict for the defendant.

The counsel for the defendant thereupon asked the learned judge presiding whether he proposed to deal with the case according to the decision just rendered, and the answer was " Yes, that is the salient feature on which I propose to put this case to the jury." The defendant's counsel requested the court to submit the case upon all the points involved, which was refused, and defendant's counsel

then said: " I will ask the court to submit this question to the jury,. as to whether notice was given to the plaintiffs or to their agents,. that the risk was canceled ? "   At this time no exception had been taken to any one of these decisions or suggestions, but when the. learned justice had submitted the questions, which he said would be. controlling, to the jury,. the defendant's counsel excepted to that. portion of the charge which left it to the jury to determine whether or not the ordinary form of policy used contained or did not contain the clause in question, taking the ground that the plaintiffs. were only entitled to a policy of the Niagara Fire Insurance Company in its usual form.

   The case, therefore, seems to have been submitted upon a wholly immaterial issue, so far as the plaintiff was concerned, because it. was to be assumed that the only policy which the plaintiff was. entitled to was such as was then in use by the company, whether it contained conditions usual or unusual.   It was the duty of · the. insured, or his representative, the broker, to have ascertained whether or not there were unusual conditions in the policy, and. the defendants could not expect to make, in their contract, any change in the form or the substance of the instrument by which they were willing to be bound.   It may be assumed, for the purposes of this appeal, that the proposition of the defendant's counsel on this subject was correct, and that the defendants had a right to interpose any defense springing out of a condition, even though it, might be declared to be unusual, which gave them the right to. terminate the policy by notice either to the insured or to the per-- sons by whom it was procured, and who in this case would be the. brokers.   There is nothing more they could ask  in this case on that subject, because that the notice was given in the manner stated is, not questioned.   The brokers to whom it was given acted upon it by sending to the office of the company and asking for the privilege of the afternoon to place the risk elsewhere.   The question *in limine*, therefore, and it is one of law upon which the liability of the defendant is believed to rest, was whether the notice given was reasonable.   It is not provided by the condition in the policy that upon the service of notice the risk shall *eo instanter* terminate.   The notice was served about half-past twelve o'clock, and the fire took place at three, before the risk could be placed

in any other company, notwithstanding the efforts of the brokers. It appears that the notices given under such circumstances, by the company, were generally given in the morning. in order, it would seem, to give the insured an opportunity during the day to substitute some other company for protection, and aside from the legal rule which should govern under such circumstances, it is quite apparent that the officers of the company, or at least one of them, understood that a reasonable time should be given under such circumstances to locate the risk. He said, although he denied that there was any provision for a reasonable time to allow the broker to place that particular risk, " I never attempt to cancel a risk too late in the day for a broker to replace it. I don't attempt to cancel a risk without giving the parties a reasonable time to replace it. I never attempted it." It does not require much reflection to determine that two hours and a half is not a reasonable time within which to replace a risk and, therefore, it would seem from the statement of this witness himself that the time which expired between the notice sent and the fire, without reference to the testimony of the broker's clerk as to its extension, was unreasonable.

The true rule must be that reasonable time is that which preserves to each of the parties the rights and advantages he possesses and protects each of the parties from losses that he ought not to suffer (2 Pars. on Con. [7th ed.], m. p. 602) ; and in *McLean* v. *The Republic Fire Insurance Company* (3 Lans., 427), it was said that an insured is entitled to reasonable notice of the determination of the company to cancel his risk. The propriety of such a rule is easily demonstrated. If any other prevailed the insurance company might in the afternoon, and after the closing of the offices in which insurance can be obtained, make service of a notice of cancellation or of an intention not to accept or continue the risk, and thus leave the insured exposed to such loss as might occur between that time and the opening of the offices of the insurance companies on the following day. The notice, therefore, was unreasonable, assuming that the defendant was entitled to give it under the contract formed by the binding-slip, and it could not avoid the consequences of the fire therefore by reason of anything urged or established on the trial. It may be that if the question was submitted to the jury as to the interview between the broker's messenger and the person at

the defendant's office after the notice was served, they would have found in favor of the plaintiff, but this was not necessary for his success, inasmuch as the notice, assuming that it could have been given, was not such as the law contemplates and demands.

For these reasons the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment affirmed, with costs.